ARTHUR v. ALLEN.

1. While a summons cannot be amended without leave of the court, an order that a person "be made a party defendant herein," implies that the summons is to be amended and then served on such person.
2. When a summons is amended by making a new party the better practice is that the amendment should be inserted in the original summons, but where an additional summons incorporating the amendment is issued, there is substantially an amendment of the original summons.
3. Where it becomes necessary since the adoption of the code of procedure to revive, or amend by supplemental pleading, a bill instituted in the Court of Equity prior to 1870, it should be done under the forms of the code. Such a bill in this case was properly revived and amended by supplemental complaint and summons.
4. Where there is an order granting leave to file supplemental complaint, *doubted* whether an order to revive was necessary; but, if necessary, it may be granted at the hearing.
5. The case of *Suber* v. *Allen,* 13 *S. C.,* 317, does not decide that this present action was then no longer pending.

Before FRASER, J., Richland, July, 1883.

The Circuit decree in this case was as follows:

This case came before me at the term for July, 1883, on a motion on notice on behalf of James C. F. Sims, Nancy Allen, James Kitchens, and Adelaide Kitchens to set aside the service of certain papers served on them entitled "amendment to supple-

mental summons and complaint making J. C. F. Sims a party defendant." These papers were served on J. C. F. Sims personally, and on Messrs. Pope & Haskell as attorneys of Nancy Allen, James Kitchens, and Adelaide Kitchens. I do not understand that any objection is made on account of this service having been made on the attorneys instead of having been made on these persons personally.

A brief statement is necessary to show how the questions arise which are now presented for the consideration of the court. In May, 1861, John M. Allen died intestate, and in June, 1861, Addison R. Phillips was duly appointed administrator of his estate. On October 5, 1867, Addison R. Phillips, as administrator, filed a bill in the Court of Equity for Richland District (now County) against Nancy Allen, Rebecca Cornwell, and Adelaide Kitchens, heirs and distributees of John M. Allen, James Kitchens, husband of the said Adelaide, and William D. Cornwell, husband of the said Rebecca, and John Caldwell, John Coate, Charles A. Bedell, and Jesse Baxter, creditors of John M. Allen, for an injunction, an accounting by the administrator, sale of the real estate, and marshalling of the assets of the estate of John M. Allen. All the parties named as defendants answered the bill, creditors were called in to establish their claims, and the commissioner in equity was ordered to take the testimony and state the accounts of the administrator, Phillips. On June 9, 1868, some testimony was taken by the commissioner as to the condition of the estate and as to the claims of certain creditors.

After this, but it does not appear when, Addison R. Phillips, the administrator, died, and on August 1, 1878, Daniel B. Miller, who was then clerk of the Court of Common Pleas for Richland County, as was his duty, applied for administration, and was duly appointed administrator *de bonis non* of the estate of Addison R. Phillips. It is not alleged that any proceedings were taken by Daniel B. Miller, under the said bill in equity. The term of office of Daniel B. Miller as clerk of the Court of Common Pleas has expired, and he has been succeeded in office by E. R. Arthur, who, it is alleged, has also succeeded him as administrator *de bonis non* of John M. Allen, and as administrator of Addison R. Phillips. John Caldwell has died, leaving a will, of which

Thomas J. Robertson has qualified as executor. Charles A. Bedell has died, and E. W. Bancroft has administered on his estate. John Coate has died, and Christian H. Suber has administered on his estate. William D. Cornwell is not now named as a party defendant, perhaps because he has died, and all interest he may have had in the estate has survived to his wife Rebecca, who is a party.

In June, 1882, E. R. Arthur, as clerk of the court, and administrator *de bonis non* of John M. Allen, without having obtained any order of court for this purpose, filed and served a summons, and with it a supplemental complaint on the said Nancy Allen, Rebecca Cornwell, James Kitchens, and Adelaide, his wife, Jesse Baxter, and the personal representatives of John Caldwell, John Coate, and Charles A. Bedell. In this supplemental complaint, the original bill in equity, and the proceedings under it, were substantially set out, and the facts which rendered a supplemental complaint necessary were stated, and the plaintiff, E. R. Arthur, joined in the prayer of said bill, and demanded such further relief as may be proper. To this complaint answers were filed by the personal representatives of John Caldwell and John Coate, deceased, creditors, and perhaps on behalf of other creditors which have not been brought to my attention. Nancy Allen, James Kitchens, and Adelaide Kitchens demurred to this supplemental complaint. The demurer was overruled by Judge Hudson, April 24, 1883, and these defendants allowed thirty days to answer.

On April 27, 1883, an order was made by Judge Hudson, allowing the plaintiff to amend the said supplemental complaint. The order provides "that James C. F. Sims be made a party defendant. That the plaintiff have leave, within twenty days from the rising of the court, to amend his complaint by alleging therein that after the commencement of the original action herein, to wit, on or about the month of September, 1883, the said J. C. F. Sims took possession of the lot of land in the city of Columbia described in the complaint," with such other allegations as might be necessary to charge said J. C. F. Sims with the rents and profits of said lot. On May 15, 1883, in pursuance, I suppose, of the order of April 27, 1883, Nancy Allen, James

Kitchens, and Adelaide Kitchens filed their answer to said supplemental complaint. On May 17, 1883, and before the amended complaint, provided for by the order of April 27, 1883, was filed or served, another order was made by Judge Kershaw amending the order of April 27, made by Judge Hudson, so as to allow the plaintiff to make additional allegations in reference to the lot of land alleged to be in the possession of J. C. F. Sims. This order seems to have been made at chambers on notice to all the parties interested to oppose it.

Under this state of things, and claiming to proceed under the authority of the said orders of April 27 and May 17, 1883, plaintiff has filed and served on Nancy Allen, James Kitchens, and Adelaide Kitchens, and on the other parties defendant in the supplemental complaint, and on the said James C. F. Sims, a summons and complaint. On the back of the summons, after the title of the cause, is endorsed "summons for relief and amendment to supplemental summons and complaint, making J. C. F. Sims a party defendant." [1] The title of the cause in the summons and complaint, is the same as in the supplemental summons and complaint, except that the name of James C. F. Sims is added as a party defendant. The summons is otherwise in the usual form. The complaint sets out substantially the matters alleged in the supplemental complaint, with the addition of such allegations as are allowed to be made by the orders of April 27 and May 17, 1883.

The object of the motion now before me is to set aside the service of these papers, this summons and this complaint in the words of the notice, to set aside the service of certain papers herein, styled "amendment to supplemental summons and complaint, making J. C. F. Sims a party defendant." These words seem to be a memorandum of the contents of the summons and complaint, which have each their own endorsement as above stated, and I take it the motion is to set aside the service of both. The motion is made by J. C. F. Sims and by Nancy Allen, James Kitchens, and Adelaide Kitchens, who have appeared for the purposes of this motion only.

The motion is based on the following grounds: 1. That said summons is without authority of law and void. 2. That said

complaint is without authority of law and void.  3. That there
has been no order allowing the plaintiff to file the "amended sup-
plemental complaint," or to file the original supplemental com-
plaint.  4. That there has been no order allowing the original
action (the bill in equity) to be continued against these defen-
dants.  5. That there is no such cause of action pending.

The first two grounds are very general, and depend on the
other three, which can best be considered together.  There are
two sections of the code which apply to supplemental com-
plaints—§142, §198, of the code of 1882.  Section 142 provides
for those cases in which, under the old practice, a bill of revivor
was necessary.  Section 198 provides for those cases in which,
under the old practice, a supplemental bill was necessary in order
to bring in new matter occurring after the commencement of the
litigation between the parties.  No order of the court is now
necessary for leave to file supplemental complaint under section
142, or even is it proper, it being a matter of right.  2 *Wait.
Pr.*, 469, ¶ 2 "a"—*Vorh. Code*, 188, ¶ 121, note "f."  An
order of the court, however, is necessary for leave to file supple-
mental complaint under section 198, to be obtained on motion,
on notice, or under order to show cause.  *Vorh. Code*, 357,
¶ 177, note "a."

The supplemental complaint, therefore, of June, 1882, was
properly filed, without an order for leave to do so, but leave was
necessary, and has been obtained, to bring in the supplemental
matter, as to which J. C. F. Sims has been made a party under
section 198.  The provision in reference to existing suits found
in the code of 1870, has been left out of the code of 1882—but a
supplemental complaint is not a substitute for the original com-
plaint, and it is not merged into it.  They are separate but allied
actions, to be tried together.  While each contributes to the gen-
eral result of the litigation, neither ever loses its individual ex-
istence.  As to this supplemental complaint, there has been
neither process nor pleading before the code, and it has come
into existence since its adoption, though the office of the supple-
mental complaint may be to get the benefit of proceedings with-
out which it would have been ineffectual.  If this supplemental
complaint of June, 1882, would have been good before May,

1882, it is good now, being, I think, amply provided for by section 449 of code of 1882: "And the practice heretofore in use may be adopted so far as may be necessary to prevent a failure of justice."

I am inclined to think that the service of the summons and complaint of June, 1882, if not sufficient of itself to operate as a revivor of the bill in equity of 1867, was at least sufficient to entitle the plaintiff to an order of course to revive and continue the action, an order which can be made whenever the parties are all in court and the case ready for a hearing. It seems to me that, whatever may be the true view of the practice, it is now too late for Nancy Allen, James Kitchens, and Adelaide Kitchens to make the question that these proceedings are not pending. They have demurred to this supplemental complaint; their demurrer has been overruled. They have answered; and now two orders, April 27 and May 17, 1883, have been made in the case, allowing this supplemental complaint to be amended by making J. C. F. Sims a party defendant. My predecessors have treated these actions as pending, and until their orders allowing this amendment are set aside on Circuit, as having been made through "inadvertence, surprise, or excusable neglect," or by the judgment of the Supreme Court, I am bound to treat them as valid, and as made in an existing suit.

It is claimed, however, that it has been decided that the original bill in equity is no longer a suit pending, and that as to this it is *res adjudicata*. In 1878, C. H. Suber, one of the defendants in this action, commenced an action against D. B. Miller, as administrator *de bonis non* of John M. Allen, and as administrator of Addison R. Phillips, the deceased administrator, on behalf of himself and other creditors, and against the heirs and distributees of John M. Allen, and also against the sureties to the administration bond of Phillips and J. C. F. Sims; amongst other things, to subject this same lot of land to the payment of the debts, and for other purposes. On demurrer filed by the administrator of one of the deceased sureties on this bond of Phillips, it was held on Circuit by Judge Thomson that the complaint was multifarious, in that it joined improperly several causes of action. One of the causes of demurrer assigned was

that there was another action pending as to the same cause of action. Judge Thomson held that this ground was not well taken, as there was no such action now pending as to be a bar to Suber's action.

Judge Thomson may have held that the original bill in equity had abated, and that it could not have been revived at all, or that it had not been revived by Miller, or that, even if it had been revived and was then an existing suit, it was not such a suit as would bar Suber's action, as the latter involved several matters not included in the first. Either view would have been sufficient to sustain his ruling on this point. If, however, Arthur had been the party instead of Miller, and Judge Thomson had made his ruling on the demurrer after a supplemental complaint had been filed and served, it is not clear how a demurrer to a complaint filed by Suber, and which assumes the facts in the complaint to be true for the purpose of the demurrer, can work an adjudication of these facts as to any one else except the plaintiff who alleges such fact in his complaint. Suber alleged certain facts in his complaint, and conclusions of law from these facts are binding only on Suber or on those who are bound by his statement.

This case was appealed to the Supreme Court, and it will be seen (*Suber* v. *Allen*, 13 *S. C.*, 317) that the complaint improperly joined various causes of action, only a part of which were involved in the first action—the bill in equity of 1867. In the view I take of *Suber* v. *Allen*, there is nothing in it which adjudges the question here, whether there was a suit pending in which the orders of April 27 and May 17, 1883, were made.

I take it, then, that Nancy Allen, James Kitchens, and Adelaide Kitchens are in court, and cannot claim on this motion that there is no such action pending as to authorize a Circuit judge "to make J. C. F. Sims a party defendant." If they are parties to an existing suit, whether by service of summons, by appearance and answer, or by estoppel in such way as to be bound by the orders, it is not easy to see how Sims or any other person called in as a new party can take advantage of irregularities or defects of which for any reason they have failed to avail themselves. "A supplemental pleading is governed by all the rules applicable

to an original pleading of a similar character, and its defects are remediable in the same manner as defects in other pleadings." 2 *Wait Pr.*, 474, *a.* There is no good reason why a supplemental complaint may not be amended by adding new matter occurring after the original action was amended. This new matter as to Sims and his possession of the lot was such as is pro-vided for in Section 198, and orders have been obtained to allow the amendment, and the amended supplemental complaint has been filed in pursuance of them. If an order to revive is necessary after the filing and service of the supplemental complaint, it can be made *"at the hearing,"* even in cases where the answer controverts the right to revive. *Dan. Ch. P. & P.,* 1709.

There is some confusion as to the terms, "commencement of an action." In one sense, an action is commenced when the first defendant is served with process or summons. It is not commenced, however, as to any particular defendant until *he* is served with summons. By the code all other modes of commencing actions, except by service of a summons, are abolished, unless it be by voluntary appearance. Actions are technically commenced by the service of summons. 1 *Wait Pr.*, 501. Provisional remedies fail unless parties are served with summons in due time after they are allowed. *Vorh. Code*, 153, notes *"a"* and *"d."*

If this is the law, there is no way by which a new party can be brought in by a supplemental complaint except by the service of a summons. In case of the death of one of the heirs at law, after commencement of proceedings in partition, by whose death, as is often the case, the descent is cast upon infants, these infants can never be made parties at all without a summons, and a summons, too, to make them parties to a supplemental complaint. The time of service of summons is time in reference to which the rights of plaintiff and defendant, in the matter of the guardian *ad litem,* are fixed by the code. They can consent to nothing. It seems to me that process is necessary, as a matter of course, to bring in new parties. The code only substitutes a summons in the place of the old *capias* and other writs at law and of the subpœnas in equity. 1 *Wait Pr.*, 467 ; see *ibid*, 441, 442, 443, 444. Under the old practice, subpœnas issued to make parties to bills of revivor and supplemental bills (*Dan. Ch. P. & P.,*

1680 and 1707), and the former chancery practice is now adopted as to making parties.    *Vorh. Code*, note "*a*," and cases.

I therefore conclude that the summons and complaint, the service of which is sought to be set aside by this motion, are such as have been authorized by the orders of April 27 and May 17, 1883, and have been properly served, and that I have no right, even if I did not concur, to question the right to make them on this motion; they are the law of the case for me. It is therefore ordered and adjudged, that the motion be refused, and that the said defendants, Nancy Allen, James Kitchens, Adelaide Kitchens, and J. C. F. Sims, have leave to file their answers within thirty days after notice of the filing of this order.

The defendants appealed upon the following exceptions.:

1. Because his honor, the Circuit judge, erred in holding "that the summons and complaint, the service of which is sought to be set aside by this motion, are such as have been authorized by the orders of April 27 and May 17, 1883, and have been properly served; and that I have no right now, if I did not concur, to question the right to make them on this motion—they are the law of the case to me."

2. Because his honor, the Circuit judge, erred in holding that "no order of the court is now necessary for leave to file a supplemental complaint under section 142 [of the code], or even is it proper, it being a matter of right."

3. Because his honor, the Circuit judge, erred in holding that "the supplemental complaint of June, 1882, was properly filed without an order for leave to do so ; but leave was necessary and had to be obtained in order to bring in the supplemental matter, as to which J. C. F. Sims has been made a party under section 198."

4. Because his honor, the Circuit judge, erred in holding that "the service of the summons and complaint of June, 1882, if not sufficient of itself to operate as a revivor of the bill in equity of 1867, was at least sufficient to entitle the plaintiff to an order of course to revive and continue the action, an order which can be made whenever the parties are all in court and the case ready for a hearing."

5. Because his honor, the Circuit judge, erred in holding that

it was not adjudged in the case of *Suber, Administrator,* v. *Allen and others,* whether there was another suit pending in which the orders of April 27 and May 17, 1883, were made.

6. Because the Circuit judge erred in holding that J. C. F. Sims, made a new party defendant, could not take advantage of any irregularity or defects of which for any reason the original parties defendant had failed to avail themselves.

7. Because his honor, the Circuit judge, erred in holding that "there was no way by which a new party may be brought in by a supplemental complaint, except by the service of a summons."

8. Because there was no motion made, or leave granted, to amend the summons granted in said cause, and without such authority there could be no amendment of summons, and his honor erred in not so ruling.

9. Because there has been no amendment of the summons in said cause, and until the original summons is amended, no amended copies can be issued; and his honor erred in not so ruling.

10. Because his honor, the Circuit judge, erred in refusing said motion.

*Messrs. Pope & Haskell, Clark & Muller,* for appellants.

*Messrs. Andrew Crawford, Bachman & Youmans,* contra.

April 6, 1885. The opinion of the court was delivered by

MR. JUSTICE MCIVER. The statement of the facts in the decree of Judge Fraser, from which this appeal is taken, is so full and clear as to supersede the necessity of making any further statement here.

The first point which we propose to consider is that raised by the eighth ground of appeal. It may be conceded that a summons cannot be amended without leave of the court, and the practical inquiry here is, has such leave been granted? The order of Judge Hudson was, "That James C. F. Sims be made a party defendant herein; that the plaintiff have leave within twenty days from the rising of the court to amend his complaint by alleging," &c. Now, if it be true, as it undoubtedly is, that the

proper mode of making a party defendant to a case is by the service of a summons upon him, it would seem to follow necessarily that where there is an order requiring a certain person to be made a party defendant, such order implies that the summons in the case is to be amended by inserting his name and serving a copy thereof so amended upon such person. While, therefore, the order in this case did not in words authorize an amendment of the summons by inserting therein the name of Sims as a party defendant, yet as it did require that he should be made a party defendant, it necessarily implied that the summons should be so amended, and then the order proceeded to provide for the amendment of the complaint by inserting certain additional allegations.

The ninth ground of appeal seems to have been taken under a misapprehension of the real facts of the case, though the papers *as printed in the "Case,"* would seem to warrant the assumption upon which that ground rests. The summons as printed did appear to be a copy and not an original, and there was nothing in the "Case" to show that there was any *original* amended summons; but from the original records introduced at the hearing by consent, it does appear that there was an original amended summons issued and served upon Sims, and the service thereof accepted by the attorneys representing the other appellants. It is true that the amendment of the summons was not made by inserting the name of the additional party authorized in the summons first issued, with an appropriate reference to the order authorizing such an amendment, as perhaps would have been the better practice, inasmuch as the rule seems to be well settled that there can be but one original summons in a case, and that instead thereof a transcript of such original summons was made in which the name of Sims was added as an additional defendant, and was styled "amendment to supplemental summons and complaint, making J. C. F. Sims a party defendant," and marked "original"; but this departure from what would have been a better practice is merely formal and cannot have the effect of annulling the paper. It appears to us, therefore, that the summons was substantially amended, and that this was done by virtue of an order which necessarily implied leave to make such amendment.

The next position which we shall notice is "that there is no

form of proceeding under the code by which Sims can be made a
party to this original bill of complaint." If this be so, then
certainly there was a very strange and unfortunate omission made
in the code. But we do not think any such omission was made.
The code, as originally adopted, (section 34,) provided for the
transfer of all actions then pending in the Court of Chancery to
the Court of Common Pleas, to be there "heard, tried, and deter-
mined, with all rights respected and preserved in the same manner
as if originally brought there." It also provided (section 465)
that the provisions of the code should apply "to future proceed-
ings in actions or suits heretofore commenced, and now pending,
as follows: (1) If there have been no pleading therein, to the
pleadings and all subsequent proceedings. (2) Where there is
an issue of law or of fact, or any other question of fact to be
tried, to the trial and all subsequent proceedings." And in sec-
tion 471, after repealing all statutory provisions inconsistent with
the provisions of the code, it proceeded to declare as follows:
"And all rights of action given or secured by existing laws may
be prosecuted in the manner provided by this act. If a case
shall arise in which an action for the enforcement or protection of
a right or the redress .or prevention of a wrong cannot be had
under this act, the practice heretofore in use may be adopted so
far as may be necessary to prevent a failure of justice."

These provisions manifestly show that the intention of the
legislature was that there should be no obstacle of any kind
thrown in the way of parties who had commenced their actions
in the Court of Equity to prevent them from proceeding to
enforce their rights according to the forms of law, notwithstand-
ing the abolition of the court in which they had originally insti-
tuted their actions and the transfer of the same to another court
in which the forms of proceeding had been materially altered,
and that for this purpose they might, in all subsequent steps,
adopt the new forms of proceeding; but if that was impractica-
ble, then, in order to prevent a failure of justice, they might
resort to the former practice. We do not see how the legislature
could have, in general and comprehensive terms, without descend-
ing to innumerable details, better expressed their intention that
no such result should follow the change in the tribunal and in the

modes of proceeding, as that which appellants contend have followed such change. Here was a proceeding pending in the Court of Equity at the time that court was abolished, which was, by the provisions of the code above referred to, transferred to the docket of the Court of Common Pleas to be there "heard, tried, and determined, with all rights respected and preserved in the same manner as if originally brought there;" but owing to the death of some of the parties it could not be determined without bringing the representatives of such deceased parties before the court. How was this to be done? If there had been no change of the law, it would have been by a bill of revivor, upon the filing of which *subpœna ad respondendum* would have issued to bring before the court the representatives of the deceased parties, and this of course would have involved the necessity for further pleading. But since the code the action would not abate, and all that was necessary in order that the rights of the parties should be respected and preserved was to continue the action against such representatives, and the mode of doing this is provided for by the code. The parties having the right to proceed with their action notwithstanding the death of some of the necessary parties, that right is "preserved" to them, after the change in the mode of proceeding and the transfer of the case to another court "in the same manner as if originally brought there." Now, if the case had been originally brought in the Court of Common Pleas after the adoption of the code, there can be no doubt that the manner in which they had a right to proceed with their action would have been that prescribed by the code. Two modes are prescribed, one of which by motion, with notice of course to the representatives of the deceased parties, who are thus to be brought in, is applicable within one year after the death of a party, and the other by supplemental complaint if more than a year has elapsed (*Code*, § 142; *old Code*, § 144); and no leave is necessary to file such supplemental complaint. *Parnell* v. *Maner*, 16 *S. C*, 348.

But it is said that there was no necessity or authority for issuing a summons with such supplemental complaint. The object was to make the representatives of the deceased persons parties to the action, and as the only mode of effecting that object is by the service of a summons, unless in the case where the ap-

plication is made by motion within a year from the death of such parties, it would seem to follow necessarily that a summons must issue, or such representatives never would become parties. It does not appear, therefore, that the objections urged to the validity of the summons of June, 1882, and the supplemental complaint issued thereon, can be sustained. More than a year had elapsed from the death of the several parties, and hence the action could not be continued by motion, and only by supplemental complaint, for the filing of which no leave of the court was necessary, as we have seen. The case being thus properly pending in court, and it becoming necessary to amend by making a new party by reason of circumstances occurring since the commencement of the action, it became necessary to obtain an order for that purpose and for filing an amended supplemental complaint under section 198 of the code (old code, § 200), and hence the propriety of, and necessity for, the order of Judge Hudson of April 27, 1883, as well as the order of Judge Kershaw of May 17, 1883, amending and extending the same.

Again, it is urged that even granting that the summons of June, 1882, and the supplemental complaint issued thereon were regular and proper, yet there was no order to revive, and such an order was necessary before any order to amend could be granted. Whether an order to revive was necessary under the code may, perhaps, be doubted; but even if such order be necessary, we agree with the Circuit judge that such order may be taken at the hearing. See the authority cited by him, 3 *Dan. Ch. Pl. & Pr.*, 1709.

Finally, it is urged that the original action was no longer pending at the time the effort was made to revive it in June, 1882, and there was therefore no suit to be revived. This position, as we understand it, is based solely upon the decision of Judge Thomson in the case of *Suber v. Allen*, 13 *S. C.*, 317. The full record in that case is not before us, and all that we know of it is what is said in the decree of Judge Fraser, and what appears in the case as reported. It seems that one of the defendants in that case, who does not appear to be a party to this case, demurred to the complaint filed by Mr. Suber in that case upon two grounds: 1st. "That there is another action pending between

the same parties for the same cause of action." 2d. "Because different causes of action were improperly joined." Judge Thomson overruled the first ground and sustained the second, and upon appeal his judgment was affirmed. As Judge Fraser very properly says, it does not, by any means, follow from this that Judge Thomson decided that *the present action* was not then pending. Indeed, there is nothing here to show that the present action was referred to. What allegations were made in Mr. Suber's complaint, all of which would be admitted by the demurrer for the purposes of that case, we are not informed of; but whether such allegations would be admitted by the parties to this case is another matter. The opinion of the Supreme Court in *Suber* v. *Allen* was confined solely to the consideration of the second ground of demurrer, and the first is not even mentioned, except in the statement of the case by the reporter. We concur, therefore, with the Circuit judge in holding that this position of appellants cannot be sustained.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.